## TOM QUALLS v. THE STATE.

### No. 2915.  Decided March 11, 1914.

**1.—Seduction—Charge of Court—Abandonment.**

Where, upon trial of seduction and abandonment after marriage, the court instructed the jury affirmatively upon every defensive issue made by the evidence, and also instructed them that if the wife abandoned the defendant, to acquit him, there was no reversible error in the contention that the court should have submitted the issue that if defendant's wife abandoned him in Oklahoma that his subsequent refusal to live with her in the county of the prosecution in Texas would entitle him to an acquittal.  Davidson, Judge, dissenting.

**2.—Same—Requested Charge—Evidence—Two Years.**

Where, upon trial of seduction and abandonment after marriage, the court correctly admitted testimony showing that defendant's wife did not intend to abandon him and showed on the other hand that he had the intention of abandoning her, etc., there was no error in refusing a special charge that this evidence could not be considered for any purpose, and the charge of the court in submitting the issue of the case was not subject to the criticism that it authorized the jury to convict defendant if they believed he intended to abandon his wife after two years.  Davidson, Judge, dissenting.

**3.—Same—Charge of Court—Abandonment.**

Where, upon trial of seduction and abandonment, etc., the evidence did not show that defendant's wife refused to marry him before he was charged with seduction, and further showed that he subsequently did marry her to secure a dismissal of the prosecution for seduction, he was under the legal obligation to carry out the obligations he assumed by such course, and the contention that the court should have submitted a special requested instruction presenting the issue that if defendant offered to marry her, and she refused such offer, to acquit, is not well taken.  Davidson, Judge, dissenting.

**4.—Same—Evidence—Other Transactions—Remarks by Judge.**

Upon trial of seduction and abandonment after marriage, testimony that defendant's wife had been engaged to other men prior to the time she became engaged to the defendant was not germane to any issue in the case, there being no testimony that she had had carnal intercourse with such men; however, the court admitted such testimony, and his remark that he did not consider the matter serious and that the jury could give it such weight as it thought it entitled to presents no error; neither does the fact that the district attorney was nervous when he objected to the testimony.  Davidson, Judge, dissenting.

**5.—Same—Evidence—Explanation.**

Upon trial of seduction and abandonment after marriage, it was permissible, under the circumstances, for the wife of defendant to explain why she had made the remark that she was going to Texas to get revenge, and to show that this was simply uttered in a fit of anger and that she subsequently made overtures to defendant to live with him as his wife and he declined them.  Davidson, Judge, dissenting.

Appeal from the District Court of Coryell.  Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of abandonment after seduction and marriage; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—I can not concur in the reversal of this case, but think the judgment should be affirmed.

The first error stated in the above opinion reversing the case is stated as follows: "It will be noted the court did not submit the issue that if defendant's wife abandoned him in Oklahoma, that his subsequent refusal to live with her in Coryell County would entitle him to an acquittal." The court did instruct the jury: "Unless you find from the evidence beyond a reasonable doubt that the defendant committed the offense of seduction upon Miss Olive Pierce as alleged in the indictment you will acquit him. If you find from the evidence that the defendant, Tom Qualls, had intercourse with Miss Olive Pierce, without a promise of marriage, if he did do so, or if the defendant seduced Olive Pierce and thereafter offered to marry her, but that she refused to marry him, *or if after they were married his wife abandoned him* or was guilty of excesses, cruel treatment or outrages toward him of such a nature as to render their living together insupportable, or if you have a reasonable doubt thereof *you will acquit the defendant."* (Italics ours.) It will be noticed that in this charge the court instructs the jury that if Mrs. Qualls abandoned her husband he should be acquitted and was a sufficient presentation of that issue and it was not necessary to give the special requested charge, for in the main charge of the court he had affirmatively submitted every defensive issue made by the testimony offered in behalf of appellant.

Neither do we think that the second special charge quoted in the opinion should have been given. It was either error to admit the testimony, or the charge was inapplicable, for it instructs the jury it could not be considered for any purpose as against the defendant. If it could not be considered by the jury "even as a circumstance against him" on any phase of the case, it was improperly admitted. In the other appeal (Qualls v. State, 71 Texas Crim. Rep., 67, 158 S. W. Rep., 539), we held this testimony admissible, and our reason for so doing was that Mrs. Qualls was testifying to a positive abandonment by appellant, and a refusal to live with her after a solicitation on her part to renew their relations as husband and wife. Appellant, by his testimony, was attempting to show that Mrs. Qualls abandoned him, and the reason of his refusal to renew the relations as husband and wife when solicited by his wife to do so, was that he had been informed by his father that she had returned to Texas to send him to the penitentiary. He denied that when he left her in Oklahoma and came back to Texas that he intended to abandon his wife; he said he intended to return to her all the time until he got this information from his father, and he would have continued to live with her but for the fact his father had told him his wife had said that she had come back to Texas to send him to the penitentiary; he introduced his father to prove that he had so told his son, and his uncle, B. L. Qualls, to prove that his wife had said

that she was returning to Texas for this purpose.   His wife denied making such remark, saying the only remark she did make to B. L. Qualls was when appellant's uncle, R. L. Qualls, told her that appellant did not intend to live with her any more, and he would give her $250 to release appellant, she became angry and said that she was going home to get "revenge."   And then testified that when her anger cooled, she had no desire to prosecute appellant if he would continue to live with her as husband and wife, and that she wrote him a letter in which she requested a renewal of the relations with appellant as husband and wife. B. L. Qualls testified he offered her the $250 to release appellant, but says he did not tell her that appellant had then quit her, saying he only told her that Tom (appellant) would not live with her longer than the two years required by law anyway.   Under such circumstances we think appellant's often expressed intention, before and after marrying his wife, that he did not intend to live with her longer than the two years required by law (of which fact she was not made aware at the time she married him) was admissible in evidence as bearing on the fact, first, whether he or Mrs. Qualls, in fact, did the act of abandoning and, secondly, on the issue of whether or not the statement of his father to him that she had come to Texas to send him to the penitentiary, was his sole reason for refusing to live with her after she came back to Texas, as claimed by him.   And if the testimony was admissible on these issues, the court correctly refused the special charge that it could not be considered for any purpose, and the charge of the court in submitting the issues is not subject to the criticism that "it authorized the jury to convict appellant if they believed he intended to abandon his wife after two years."   Such an issue was not submitted to the jury, nor could the jury have been misled into any such misconception of the charge as given.

The contention in the opinion that the court should have given the special charge presenting the issue that if appellant offered to marry her and she refused such offer, we can not agree to for two reasons. First, the court, as shown above in the charge copied, did so instruct the jury.   Secondly, while the court did submit that issue, we do not think such an issue is really raised by the testimony.   While it is true, appellant testified that before Miss Pierce (now Mrs. Qualls) told him she was pregnant, he discovered the fact that she had missed her menstrual period by looking at her, and suggested as much to her, and also suggested they get married at once, but says she denied she was pregnant and said she was not ready to get married right then.   However, appellant also testified that shortly thereafter, Miss Pierce came to him and told him she was pregnant and insisted on him marrying her and he refused to do so.   Mrs. Qualls denies all except that when she first discovered she was pregnant she suggested to appellant that they get married at once and he refused, and when she kept insisting he stopped coming to see her, when the prosecution for seduction was begun.   Take the testimony of appellant alone, and in its strongest light it was not a

refusal to marry, but only a suggestion of delay, which in but a short time he admits she came to him and said she was now ready to marry him. This does not present a refusal to marry in the sense that would bar a prosecution for seduction. And furthermore he subsequently did marry her to secure a dismissal of the prosecution for seduction, and having done so to obtain the dismissal of that case, he was then under legal obligation to carry out the obligations he assumed by such a course.

As to whether Mrs. Qualls had been engaged to other men prior to the time she became engaged to appellant, was not germane to any issue in the case, as he did not propose to follow it up with any proof that she had had carnal intercourse with such men, and the objections of the district attorney should have been sustained. However, as the court did admit the testimony at appellant's suggestion, the fact that in doing so, he remarked, "I don't regard the matter serious, I think it admissible, and the jury can give it such weight as they think it entitled to" presents no error. It is shown that by the bill State's counsel contended that it was inadmissible to compel Mrs. Qualls to give the names of the men to whom she had formerly been engaged, and said it might cause divorces as some of the men had married. The court remarked he did not regard it as a serious matter, implying that it would not be likely to cause divorces, and such a remark would not be a comment on the weight of the testimony, for he followed it up by saying that the jury could give the fact that she had been engaged to other men, such weight as they thought proper. Neither do we think that the bill indicates the district attorney was nervous about the matter,—he had a right to make an objection to testimony he thought inadmissible, and we think his objection should have been sustained, for it would be immaterial how many men she had been engaged to prior to the time she became engaged to appellant.

We also think it was permissible under the circumstances for Mrs. Qualls to explain how came her to make the remark she was going to Texas to "get revenge." Appellant elicited this fact on cross-examination of the witness, introduced other testimony to prove that she did make the remark, for the purpose of showing that his wife had abandoned him and he had not abandoned her. The explanation she gave was that she had just been informed that she would be paid $250 to release appellant from his marital vows, and further informed, at least, that he would live with her only two years at most if she did not take the money and release him; that this angered her and she made this remark under such exciting influences. It also further appears she had just gotten hold of a letter written by appellant to his brother, Cleve, wherein appellant had said, one of them being in Texas and the other in Oklahoma, "he was just as close to his wife as he ever expected to be, and he felt like a bird out of a cage, and felt free and was going to see some of the world." A wife, under such circumstances, would be calculated to get angry and make remarks and when appellant elicited such remarks as defensive matter, the occasion for them being made, is cer-

tainly admissible. This, too, especially when it appears that she subsequently made overtures to appellant and he declined them.

We have discussed only the matters discussed in the above opinion; however, we do not think any of the other matters present error and are of the opinion the judgment should be affirmed.

*Affirmed.*

DAVIDSON, Judge (dissenting).—This is the second appeal; the disposition on first appeal can be found reported in 71 Texas Crim. Rep., 67, 158 S. W. Rep., 539.

Judge Harper, rendering the opinion of the court on the former appeal, suggested that a new indictment be found setting up all the statutory grounds under which appellant might be convicted, to meet the different phases of the testimony as shown by the record. It may be stated generally, there is no very substantial difference between the facts now and on the former appeal. This indictment contains two counts, the first charging abandonment by appellant of his wife in Coryell County, and the second charging that he refused to live with her in that county. The other portions of the statute are not set forth in the indictment.

The contention may be thus stated: The prosecution contends the abandonment was by appellant. Appellant contends the abandonment was on the part of his wife. It is also suggested the abandonment occurred in Oklahoma, and was by the wife and not the defendant, and that she subsequently moved back to Texas to Coryell County. If the prosecutrix abandoned appellant in Oklahoma, he should not be prosecuted. The statute does not authorize his conviction where the wife abandons. It is only in case he abandons her under circumstances denounced in the statute. Again if he abandoned her and did this in Oklahoma, that State would have jurisdiction and not Coryell County. If she abandoned appellant in Oklahoma, then he would not be violating the statute in refusing to live with her after her return to Texas. These matters were all presented under the evidence applicable to the counts in the indictment. Several exceptions were made to the charge under our new practice act. These were subsequently presented in the motion for a new trial, and are properly reviewable.

The court substantially charged the jury that if Mrs. Qualls abandoned her husband, defendant, or was guilty of excesses, cruel treatment or outrages toward him of such a nature as to render their living together insupportable, or if they had a reasonable doubt thereof they should acquit. He further charged, on the other hand, that if appellant in Coryell County abandoned his wife as alleged in the first count of the indictment, or that he then and there refused to live with her as alleged in the second count of the indictment, and the said Mrs. Qualls had not theretofore abandoned him, nor been guilty of such excesses and outrages and cruel treatment toward Tom Qualls as to render their living together insupportable, but that such abandonment by defendant, or

such refusal to live with her, if he did so, was without such fault on her part as is explained to the jury in the foregoing portions of the charge, then they will convict defendant of abandonment after seduction and marriage as alleged in the indictment, etc.

These are the charges upon which the case went to the jury on the issues charged in the indictment. At the request of appellant the court charged the jury that if they should believe that appellant abandoned his wife in Oklahoma, or that at the time of such.abandonment, if any, defendant was not at the time in Coryell County, or if they had a reasonable doubt of this, they should acquit. This was given. It will be noted the court did not submit the issue that if defendant's wife abandoned him in Oklahoma, that his subsequent refusal to live with her in Coryell County would entitle him to an acquittal. This was an issue in the case. If she abandoned him in Oklahoma, then his subsequent refusal to live with her in Coryell County could not be imputed to him under the statute as violative of its provisions. If she abandoned him in Coryell County, he would not be responsible either for abandonment or refusing to live with her. These issues were all presented by the evidence, and should have been fully charged. The following charge was asked, in this connection, but the court refused to give it: "At the request of the defendant, you are charged, etc., as a part of the law in this case and as a part of the main charge, that should you believe from the evidence that the defendant was informed that Olive Qualls had left his home in Davidson, Oklahoma, and had separated from him, and returned to Coryell County, Texas, for the purpose of undertaking to have the defendant sent to the penitentiary, and that he believed the same to be true, and that he had not abandoned the said Olive Qualls at the time she so left his home, or if you have a reasonable doubt on this point you will acquit him." This was refused. This was pertinent to the case and should have been given. Without taking these questions up seriatim and entering into anything like a discussion at length, the matters may be thus restated as raised by the indictment and the testimony: If appellant abandoned his wife in Oklahoma, he could not be convicted under the first count of the indictment. If he abandoned her in Oklahoma, and he subsequently refused to live with her in Coryell County, then he might be prosecuted under the second count of the indictment. See Qualls v. State, 71 Texas Crim. Rep., 67, 158 S. W. Rep., 539. If she abandoned him in Oklahoma, then appellant could not be convicted in Coryell County under either count of the indictment. It is only where he abandons his wife or refuses to live with her that he is responsible criminally,—not where she abandons him. Under this theory he would not be responsible in Coryell County under either count of the indictment. These issues should be clearly and pointedly and affirmatively submitted to the jury for their consideration. These issues are sharply drawn by the testimony. Because these matters were not presented as required by law the judgment will be reversed.

There is another charge asked by appellant, which was refused, which

we are of opinion ought to have been given. That charge is as follows: "At the request of counsel for the defendant you are charged, in connection with the main charge and as a part of the law in the case that under the statute of this State defining the offense of 'abandonment after seduction and marriage' the defendant is only required to live with the alleged seduced female for two years from the date of said marriage, and that it is immaterial whether he intended to separate from her or not after that time, and you will not consider as any evidence against the defendant, any testimony in this case relative to what his intention was as to whether he would continue to live with Olive Qualls after said two years had expired, and such intention is not even a circumstance against him and should not be considered by you." This was refused. Perhaps as requested it does not fully present the law applicable to the case made by the facts. There was a great deal of testimony in the case to the effect that appellant married her for the purpose only of living with her the two years required by the statute. On the former appeal this testimony was held admissible as bearing upon the question of abandonment. It was permitted to go to the jury as shedding light upon the question as to who was responsible, the defendant or his wife, in regard to the abandonment, and which one, as a matter of fact, abandoned the other. The fact that he intended to live with her only two years would not subject him to a prosecution, and for this he could not be convicted. If he lived the two years with her the statute was complied with. The Legislature saw proper to put the statute in this form, and that would settle the question. The jury should have been in some way instructed that they could not convict him because he had intended not to live with her but two years. This could not form the basis of a verdict. This character of testimony was admissible, as held on the former appeal, for the purpose stated in that opinion. The court should in some way instruct the jury they could not convict him for his intention and purpose not to live with her after the expiration of the two years; that they should be limited in their finding to the two years set out in the statute.

Appellant asked another charge along this line, that should the jury find from the evidence that defendant seduced Olive Pierce, and also that he in good faith after she was found to be pregnant from such seduction offered and tendered to marry her, and she refused such offer on the part of the defendant to marry her, or if the jury had a reasonable doubt on this point, they should acquit him. The court in that connection instructed the jury rather briefly as follows: "Or if defendant seduced Olive Pierce and thereafter offered to marry her but that she refused to marry him, then appellant would not be guilty." While this submits the question, it is along with a lot of other matters, and the charge asked by appellant specifically submits this matter. This charge should have been given more specifically than was given by the court. This pointed out specifically this matter, and it is clearly raised by the testimony. The evidence at this juncture shows when appellant was

informed of the fact and knew that Miss Pierce was pregnant, he offered then to marry her; she declined at the time, and seems to have placed it on the ground that she was not ready to get married, but in any event she declined then to marry him, but subsequently after the indictment was preferred she did consent to marry him. Under our view of this matter if defendant once offered in good faith to marry her and she declined it, that fulfilled the requirements of the statute, and the subsequent acceptance of the offer would make no difference so far as the abandonment is concerned.

Quite a number of bills of exception were reserved to testimony that on the former appeal was held admissible, and about which appellant asked a special charge limiting it so that the jury would not convict him on the theory that he only intended to live with her two years. The testimony was admitted showing all these matters, both directly and indirectly, as bearing upon the question as to who brought about the abandonment. The court signs one of the bills of exception, and qualifies the other bills by referring to this qualification, which is as follows: "In explanation of the above bill I desire to state, that the testimony set out in this bill and other testimony of a similar nature was admitted by the court on the question of the defendant's motive and intent. It was the State's contention that the defendant only married the prosecuting witness to escape prosecution for seduction. The defendant himself testified that he never intended to live with her any longer than the two years required by law. It was further the State's contention that the defendant was continually nagging prosecutrix and resorting to subterfuges and strategy to force her to leave him and even offering to pay her to do so. It occurred to me that the evidence in question would throw light on the defendant's motive and intent in his dealings with his wife after marriage. And that his conduct should be viewed by the jury in the light of his true attitude toward his wife, and his expressed determination to desert her after two years. His willingness to live with her at all, and his doing so being compelled by law for two years furnishes a powerful motive for him to leave her before the expiration of the two years and for an insufficient or no cause. With this explanation the bill is made a part of the record in the case." As before held, this character of testimony was admissible as bearing on the question as to whether or not the wife deserted him or he deserted or abandoned her. This testimony could not be used as a basis for a conviction. It could only be used to throw light upon the other question, and under the ruling of the court upon the former appeal it was admissible.

There is another bill, in substance, as follows: "While the State was introducing testimony before the jury and while the witness, Olive Pierce Qualls, was on the stand testifying as a witness in behalf of the State, and while she was on cross-examination by defendant's counsel, the following occurred: Q. Tell the jury how many boys you were engaged to before you were engaged to the defendant? A. I don't know. Q. How is that? A. I said I didn't remember. Q. Do you

say there were several? A. No, sir, there wasn't very many. Q. Was it as many as five? A. No, sir. Q. How —. A. No, sir. Q. As many as two? A. Yes, sir. Q. What two? A. I don't think I ought to have to tell. Q. How is that? A. I don't want to tell, some of them would deny it now I guess.

"Counsel for the State had been making objections all along to this testimony, and his objections were overruled, and at this time he renewed his objections and the court remarked: 'I don't regard the matter serious. I think it would be admissible, and the jury can give it such weight as they think it is entitled to.'" Exceptions were reserved to the remarks of the court in the presence of the jury in stating that he did not regard the matter as serious, and its being upon the weight of the testimony; and this bill was tendered in this condition, and the court qualifies it as follows: "With reference to the above and foregoing bill of exception, the bill states what transpired correctly down to the point where it is shown that the State objected to the witness being allowed to tell the number of persons to whom she had been engaged; at this point the district attorney renewed his objections previously made to the testimony and as ground for said objections stated to the court that to permit said testimony might cause separation between men and their wives or result in divorce proceedings and disturb the tranquility of homes, etc., and the court said in response to the State's argument: 'Rufe (meaning Rufe McClellan, district attorney), I do not regard the matter as serious as you do, I think the testimony would be admissible, and I will admit it and the jury can give it such weight as they think it is entitled to.' The remark of the court that I did not consider the matter as serious, etc., had reference as the connection shows to the argument that if the testimony was admitted separation, divorces and other serious trouble might follow, as the State was contending and was intended by me as a dissent from the State's view as to the consequences of admitting the evidence. However, I followed the remark in question with the statement that I would admit the testimony and that the jury would give it such weight as they thought it entitled to. I make this explanation to show the connection in which the remark was used. Without the explanation here noted the bill would not be a fair cne. If counsel for defendant excepted to said remark of the court I did not hear it but in deference to the stenographer's notes showing such exception, though the grounds are not stated, the bill is allowed with the above explanation." The stenographer certifies as follows: "I, B. W. McKenzie, official court stenographer of the Fifty-second Judicial District, hereby certify that the above and foregoing is a verbatim report as shown by my notes taken in the trial to which it relates and upon the subject to which it relates." The court qualifies it by stating that inasmuch as the stenographer's notes show the things as contended by appellant he qualifies it as stated above. The court should have ruled without intimating what he thought about the testimony, whether it was serious or not. He did not explain to the jury what he meant by not

being serious, and had he simply ruled on the objections, the explanation would not have been necessary. The statute prohibits the court from indulging any remarks indicating what he may think of the weakness or strength of testimony. If it is admissible, it could go to the jury; if not, it should be rejected without the court expressing his views on its weight or value. The district attorney's objections, to say the least, are quite novel. Just why he should have suggested as an objection that the testimony sought might bring about divorces and disturb the tranquility of the community, etc., he does not explain. This would not be a legal objection. If the testimony is admissible a defendant's right should not be jeopardized because the district attorney thought that some family might be disturbed because of the previous relations of the prosecutrix with the husband of those different families. It would rather indicate the district attorney was nervous about this matter, and that it might develop facts that might show the prosecutrix in a light that might be detrimental to the State. But the district attorney's objections were not legal, and to say the least of it, peculiarly novel and not sustainable from any standpoint. Defendant was entitled to the testimony; his liberty was at stake, and if it disturbed the peace of other families, appellant ought not to suffer for that reason. If the testimony is legitimate he is entitled to it, and his liberty should not be jeopardized because it might disturb, in the district attorney's mind, the tranquility of families, or possibly bring about divorces. It may have developed facts that would bring about divorces—the bill does not show, but it does show the suspicion of the district attorney that something of that sort might happen, or in his belief it might happen. It is part of the district attorney's legal business, as we understand the laws of Texas, to see that a man is legally convicted. It is the defendant on trial,—not the divorce or possible divorce proceedings in some other case, and it is as much the duty of the district attorney to see a fair trial is had as it is to secure a conviction.

Another bill recites that during the introduction of the evidence and while the prosecuting witness was on the stand testifying in behalf of the State, and after she had testified that at one time in Oklahoma, after she returned there from her visit to Texas, and during the absence of the defendant and while he was away from Oklahoma, she had stated that she was going to return to Texas and "get revenge" against the defendant, she then sought to explain her statement with reference to returning to Texas and getting revenge against the defendant, and appellant at the time objected to any explanation of said testimony by the witness, and the court overruled defendant's objection and permitted her to explain her testimony as follows: "I thought I would come down here and I had an idea I would get to live with him (meaning defendant, Tom Qualls) again; that is the idea I had." The court permitted this, he says, on the theory that this was an explanation, and she had a right to make the explanation, or the State rather had a right to prove this explanation on her part because the defendant had brought out from her

the fact that she was going to Texas "to get revenge." The writer is of the opinion that this explanation was not admissible. It was secret in her mind and not divulged. He was not advised or informed of her secret intentions. If this was communicated to defendant, it, of course, would have been admissible, but a secret or undisclosed motive of the witness could not be used against appellant. She had stated she was coming back to Texas to get revenge, and the evidence shows defendant was aware of this. Had her explanation when she changed her mind been given to defendant, it would be admissible, because he had previously introduced the other part of it, but this was a secret undisclosed motive on her part. She seems not to have disclosed it to anybody, but simply testified upon the trial of the case. She was quite angry at the time she made the threats "to get revenge," but she says she afterwards changed her mind about it, but she did not communicate this change of her mind to defendant or any one else. So as it is presented, we are of opinion the explanation should not have gone to the jury. Branch Crim. Law, sec. 478, for cases.

The other bills of exception relate to charges which have been sufficiently mentioned in a general way without further discussion.

The judgment ought to be reversed and the cause remanded.